Okay, the last case before the court this morning is case number 20-1600, Ethicon LLC v. Intuitive Surgical, Inc. Mr. Pepe has reserved five minutes for rebuttal. Counsel, you may proceed when you're ready. Thank you, Your Honors. Good morning and may it please the court. I'm going to begin with the board's decision with respect to the issued claims of the 658 patent. The specification draws a clear distinction between a stapling system that has the claimed rotary drive member and a stapling system that includes only linear drive members, such as the stapler that's disclosed in the Whales prior art reference. The board's final written decision included a construction of the rotary drive member limitations that was unreasonably broad in light of the specification because it encompassed instruments that include only linear drive members, such as Whales. Despite this being a critical issue to the patentability of the claims at issue, the board's analysis consisted of only a single paragraph. The board didn't analyze the specification and also didn't address whether its construction was reasonable in view of the additional limitations of dependent claims 4, 9, and 12. And the result was an overly broad construction that encompasses any component that rotates to drive another component. Now, as a threshold issue, I'd like to address Intuitive's argument that the claim construction argument is moot because the board purportedly adopted and applied Ethicon's construction in the final written decision. The full review of the record clearly shows that that's not what the board did. Now, although the board stated in its final decision of Appendix 18 that it was applying patent owner's construction, in the very same sentence, the board indicated that Ethicon's requires that the rotary drive member must itself rotate to drive another component. But that wasn't the construction that Ethicon proposed. Ethicon proposed construing rotary drive member as a component that rotates to drive another component in response to actuation of the stapling system. In contrast, it was Intuitive that proposed construing the term to mean just any component that rotates to drive another component, which is the construction that the board actually adopted in its claim construction 7 section. What the board, I thought, did was say, we're not going to limit what is otherwise broad claim language just because the specification doesn't specifically describe an embodiment that appears to be covered by that broad language. Isn't that right? Yes, Your Honor. The board effectively, in our view, interpreted the claim language in the way it did because the specification, in their view, did not prescribe limiting the broad language. That being said, the proper standard is not whether the specification prescribes the broadest possible construction, but whether it's the broadest reasonable interpretation in light of the specification. So, you're saying if there's really only one embodiment disclosed that, by definition, the language can't go beyond that? No, Your Honor. That's not our position. Our position is that the specification consistently describes what a rotary drive member is in the and the board's construction clearly went beyond that. The board didn't address any of that text in the specification in rendering its final written decision and construing the term. The board acknowledged in its decision that it didn't discern a difference between the constructions that the parties had proposed, but there was a substantial difference which affected the patentability of the claims with respect to the whales reference. At the con, explicitly... Counsel, this is Judge Stoll. So, does your claim construction at this point include the idea that the construction must exclude a trigger or something that's integral with the trigger from the rotary drive? Yes, Your Honor. Our construction is that the rotary drive cannot be the component that the user actuates when initiating the stapling system. In certain cases, that can be a trigger. There's a clear distinction in the specification between the rotary drive member and the component that actuates the system. And the specification... We have a number of cases that talk about negative limitations. That's where you're saying not just what a claim limitation requires, but also what it can't be. And so, it seems to me that you're trying to read in a negative limitation into this claim construction. And my question is, do you know what the standard is for reading in a negative limitation into a claim construction? Yes, Your Honor. We understand that's a very high burden. We don't believe that's what our construction is here. Our construction is simply that the component that actuates the stapling system is a separate component from the rotary drive member. So, we don't believe that's imparting a negative limitation into the claims. It's simply making explicit that the rotary drive member is not the component that is used to actuate the stapling system. It's hard because you said earlier in response to my question that what your construction was was that the rotary drive could not be the trigger or the component for actuation or even part of it, which does sound like a negative limitation. We don't believe that's a negative limitation, Your Honor. Certainly, any construction... Why not? Any construction... What is the difference between when something's a negative limitation and when it's not? Well, any construction would likely include certain components and exclude certain components depending on the construction and the definition. The fact here that the component that is being actuated is not the rotary drive member does not mean that it's a negative limitation. It just means it doesn't fall within the definition of that term. And we think that's a reasonable construction in light of the specification here. For example, in column 11, 23 to 51, the specification describes an exemplary system where the rotary drive shaft, which is a rotary drive member, is a component that rotates in response to actuating the system. In contrast, the system that's disclosed in Wales, when the system is actuated, it results in linear translation of other drive components. So, there's a clear description in the specification distinguishing between systems that have rotary drive members that rotate in response to actuating the system and systems that only have linear drive components, such as what's disclosed in Wales. Do you want to move on to your proposed amended claims? Yes, I can do that, Your Honor. We think there was a clear error by the Board with respect to the proposed substitute claims. In particular, the Board failed to adhere to the standards set forth in Duncan. Under Duncan, the Board was required to determine what portions of the claim were perceived by another and then compare those portions with a reference to what Intuitive had relied on for its anticipation argument. Now, although the Board concluded that individuals other than Mr. Shelton made inventive contributions to Shelton 1 reflected in paragraphs 59 to 65, the Board failed to conduct the other part of the required analysis, which was to assess whether it actually relied on those portions of Shelton 1. Do you think that the Board was confused between Shelton 1 and Shelton 2? I don't believe the Board was confused between the references, Your Honor. Shelton 2, Ethicon had successfully explained why that did not anticipate the claims. Our understanding of their decision is that they were confused as to what the analysis should be with respect to Duncan, and they determined that once they assessed that the other inventors had identified any portion of Shelton 1 that was used in Intuitive's analysis, that would apply to all the claims. But the standard should have been that the Board assessed that on a claim-by-claim basis, and it was clear from Intuitive's briefing on this issue that they never relied on paragraphs 59 through 65 in its anticipation argument for claims 20 and 21. If we agreed with you, what then? I mean, is that a situation where we'd have to say, or is there something more that the Board would be permitted to do in its assessment of the proposed amendment that we would just have to leave open on remand? Well, we believe the proper course would be for the Court to reverse the anticipation binding of claims 20 and 21 with respect to Shelton 1. However, a remand would be required because there were, I believe, one or two other combinations with respect to claims 20 and 21 that the Board did not consider in its final written decision. So, ultimately... I have a quick question. Why is it that we would remand? Why wouldn't the Board be able to look at this anticipation issue again, you know, understanding that it previously was looking at the wrong portions of Shelton that were being relied on for anticipation, Shelton 1, that is? Why wouldn't that... Why doesn't that present a factual issue that we shouldn't be deciding in the first instance that the Board must look at on remand? Well, I think as we explained, and I believe in our blue brief and gray brief, that there really is no evidence that could support that. However, you know, the only conclusion that could be drawn from the evidence that was put in is that Shelton 1 can anticipate because those were not... The Board already made the necessary factual findings. I'm looking at the Board's decision that... Appendix 34, where they say that the petitioner relies directly and expressly on content appearing in 57-66 of Shelton 1, and that that matches the very content specifically identified by Shelton as the other embedders were. Are you saying that that finding there is clearly erroneous? Yes, Your Honor, that finding is erroneous because the Board did not assess each claim individually. Well, the sentence... If the sentence is true, they are saying that the petitioner is relying on content in 57-66, and that matches to... For anticipation, and then that matches up to the evidence that was done by the others. So, Your Honor, while 57-66 may have been relied on with respect to claims other than 20 and 21, it's clear from the record that paragraphs 59-65 were not relied on for the claims 20 and 21. And the error in the Board's analysis was that they just lumped in all the claims together without assessing them on a claim-by-claim basis. Well, at Appendix 7-12, you see them relying on Shelton 1, paragraph 57 and 15 with regard to claim 20. So, I don't know how you can say that that's totally, clearly erroneous. Claim 20, if you look at page A7-24, the explanation for the anticipating ART on 20 is references back to claim 15. And we look at claim 15 on page 7-12, and it shows Shelton 1, paragraph 57, figure 7. So, at least I think the Board got it right with regard to that reference. Yes, Your Honor. The issue is on Appendix 7-12. Would you agree with that, what I've just said? Yes, Your Honor. We would agree that the Board, or Intuitive, relied on paragraph 57. However, on page 34 of its decision... For claim 20, correct? Yes. Okay. However, I would just point out that in page 34 of its decision, the Board only indicated that Mr. Morgan and Mr. Auerkirk contributed to paragraphs 59-65. So, the fact that Intuitive relied on paragraph 57... I'm sorry, Your Honor. Help me out on the last sentence. You said where the Morgan and their contributions were at 59? 59-65. That's at Appendix 34. I'm looking on 34. Okay. And so, it's the beginning of the second paragraph.  Okay. So, ultimately, whether paragraph 57 was relied on doesn't demonstrate that Shelton one would be by another. Okay. We'll give you two minutes for rebuttal, since we used it all up. Ms. Fiorella? Yes. Good morning, Your Honor. May it please the Court, Natika Fiorella on behalf of the Appellee Intuitive. Your Honors, I'd like to start with whether the Board's finding that Wales anticipates the rotary drive member limitation is actually, as my colleague suggests... Ms. Fiorella, before you do that, so we don't start a train of thought, on the substitute claims, can you go back and show us precisely where your client was the portions of Shelton one, where there had been contribution by Morgan and Wernick, that you're claiming that there were anticipation of those sections? Certainly, Your Honor. So, if I could invite the Court's attention to Appendix 719. Really, the standing 716 through 719, this is where we are mapping Shelton one or the 957 application to Claim 15, which is fully referenced and incorporated into our Claim 20 analysis. And throughout, you can see that we do rely on...  So, if we start with Appendix 714, we have in the middle of the box, we say, Shelton one's housing includes a rotary drive shaft, e.g., drive shaft 48. We cite paragraph 54 and we cite figure seven. So, this is one example of where we are mapping the 957 application, Shelton one, to one of the... But 54 doesn't match to the contribution of the others. It doesn't. Well, Your Honor, in our opinion, paragraph... Isn't it irrelevant if it doesn't match to the other embedders? No, Your Honor. Our position is that Mr. Shelton may have identified just those paragraphs 59 through 66, but he did not say that there was no other contribution from the joint inventors to any other paragraph in Shelton one. And importantly... So, I apologize. I have two responses to that. So, first is, we shouldn't just be looking at 59 through 66. There... But the board never found a contribution to any other paragraph. So, are you saying the board erred? No, Your Honor. If we look at Appendix 35, what the board continues to say after focusing on the paragraph 57 through 66 is it says, the content, and this is Appendix 35 at the top, the content of Shelton's figures seven through 10 was relied upon considerably by petitioner in support of its theory of anticipation of the substitute claim. In our view, such circumstances reasonably suggest that the contributions of Morgan and Oerker were sufficiently significant when measured against the full anticipating disclosure. Figure seven is all over our mapping of Claim 15, which is incorporated in for analysis of Claim 20. Even Ethicon doesn't dispute that we certainly rely on Figure 7 very heavily. And Figure 7, which the board says is relied upon by us, reflects the contribution of these other two inventors. You're saying that if Figure 7 is relied upon for purposes of 15, we should just assume that you meant it was also supposed to be relied upon for Claim 20? Well, actually, I don't think you need to make that assumption, Your Honor, because in our charts for Claim 20, we say, go back to our analysis for Claim 15. So, we fully incorporate our entire analysis for Claim 15 into Claim 20. We just didn't rewrite every limitation. So, we don't need to make that assumption. And I don't believe my colleague on the other side is suggesting that we needed to rewrite everything for Claim 15 and Claim 20 in order to accurately show these anticipatory disclosures. So, the questions really come down to just based on the board's finding that we relied on Figure 7, four key elements of these claims, is that enough given that the only description in the Shelton One application of what Figure 7 shows is in paragraph 59 through 66. Those are the exact same paragraphs that Mr. Shelton himself says were contributed to by the joint inventors. So, we have Figure 7. No one's disputing that. And we know that where we describe, where the patentee describes that figure is exactly the paragraphs that Mr. Shelton said were contributed by others. But I'd also like just to make one more point, kind of stepping back. Shelton One, many of the paragraphs and the ones that we rely upon to show, for example, the rotary drive shaft limitation, which is part of Claim 20, it describes what that shaft does in maybe a different paragraph, like 54. But I can direct Your Honor's attention to where it incorporates that very same drive shaft, 48, which I pointed to that we mapped to the claim. And on page, appendix page 2719, in paragraph 54, it tells us what that rotary shaft does, that main rotational shaft does. And then in 55, it says we have this firing trigger. That firing trigger, when you actuate it, it moves the rotary main shaft, which we just described. And then when you get to paragraph 59 through 66, which are, again, the very ones that Mr. Shelton himself says were contributed to by the other inventors, on paragraph 60, we see when you take that firing drive and you click it back, that causes a sensor to tell the motor, okay, now you should run. And when the motor runs, it rotates the same rotary drive shaft. So to us, Your Honor, what EPICON is proposing is an overly formalistic recitation that Duncan doesn't require. We certainly relied on the key areas of the 957 application in order to match the limitations. And Mr. Shelton himself said that the motor, I mean, the title of the Shelton One application is Motor-Driven Surgical Cutting and Fastening Instruments. He himself said the motor is the area that the other two inventors contributed to. So we feel that all of this... But the board didn't cite figures one through seven of Shelton, though, did they? The board cited figures seven through ten of Shelton. And we relied certainly on figure seven, which the board also pointed out. So the figure seven, which is the actual embodiment that shows how the motor system works, there's no disputes that we cited for substitute claims 20 and 21. Can I just... That's very correct. Figure seven, right? I mean, just to make sure I understand, you did not identify paragraphs 59 through 65, right? Yes, Your Honor, it's correct. We did not expressly cite those paragraphs in our claim charts. Why not? I mean, it seems a little like post hoc argument now to be able to say, well, what we really meant was 59 to 65 because we cited figures one through seven. Well, Your Honor, to be honest, we believe that the full 957 disclosure is very related. So we were just trying to really direct the board's attention to when we say rotary drive shaft, where is the first place that Shelton 1 tells us what the rotary drive shaft is? We just didn't say every time that the 957 application actually, you know, puts the rotary drive shaft into use, for example, in the motor driven embodiment. And the reason is because, you know... I'm a little confused because you're emphasizing the importance of figure seven now, but you and you've said that their description of figure seven is only a paragraph 59 to 65, but you never actually cited those. Certainly, we cited figure seven. We did not cite the paragraphs themselves that describe figure seven. You know, certainly we could have, but we thought that by showing the figure and mapping to the exact, you know, rotary drive shaft is 48, here is 65 and so forth, we were providing enough information from which the board could see that we were relying on the motor driven embodiment of Shelton 1, which Mr. Shelton himself says the other inventors contributed to. If I could, Your Honor, I just want to pull back a little bit from our focus on these paragraph numbers. Certainly, they are helpful because they are what Mr. Shelton said the joint inventors contributed to, but the board also found that Mr. Shelton's declaration was simply too vague to really say that these were the only contributions of the joint inventors, and why the joint inventors contribution to the motor generally isn't enough to say that they were key people in the disclosures, the anticipatory disclosures that we relied on. So, even just stepping back a moment, because it was Ethicon's burden of production, they needed to come forth with credible evidence to say, look, here is what I invented. Here is how that maps to Shelton 1. Mr. Shelton didn't do that. He didn't walk through every single paragraph and say, I invented this, I invented that. He didn't. And that conclusory nature, I think, led the board to focus particularly on those paragraphs, which it was entitled to do. But that's not the only disclosure in Shelton 1, from which we can see that there is an anticipation argument for the substitute claims. So, putting all that aside, though, Your Honors, even if we were to say that Mr. Shelton's declaration is enough, which obviously we disagree with, but if it were enough, because, for example, the court would find that we didn't rely on the exact paragraph numbers, Mr. Shelton's declaration still needs to be corroborated because it is an inventor testimony. And the board did go that extra step and make additional fact findings that Mr. Shelton's declaration wasn't corroborated itself. But what about the argument that the board imposed a wrong or improper legal standard for corroboration? Because they basically said that every breath he took had to be corroborated by somebody else, rather than looking at the totality of everything that was presented. Your Honor, we disagree with that. We don't think that that's what the board did at all. The board looked at the only pieces of evidence that were provided to it by Ethicon to supposedly show corroboration. The one was a declaration from another inventor, Mr. Morgan, and the other was an attachment to Mr. Shelton's declaration of inventor disclosure statements. What the board did was look at all of those, and particularly important, it looked at them in light of the already vague declaration that the board found and made a factual finding that Mr. Shelton's declaration itself wasn't specific enough as to what his contributions were versus others. And then it looked, as it should have, to what Ethicon says purportedly corroborates the testimony and simply found, again, with factual findings, that Mr. Morgan's declaration was again vague. I mean, Mr. Morgan actually said he was involved in the decision and the conception of how to incorporate demotor into the design architecture. To the extent that is supposed to be such a non-inventive contribution to the Shelton One application, that was not in the declaration. So the board found that there was not enough information there from one to say Mr. Shelton himself came up with all of the important things that are relied upon by us in validating the substitute claims. But, you know, these other joint inventors, they just had to do with the motor, and that's not that important. Ms. Pero, Judge Clevenger, if we were to reject your argument that figure seven serves to connect the dots, so to speak, to preserve your anticipation claim, then we wouldn't need to reach corroboration at all, correct? I'm sorry, Judge Clevenger. If we were to read the record and say, well, we're sorry, we disagree with you, we don't think you sufficiently made your case that there is anticipation as to specific features of the invention, the contribution was by others to that part of the invention, you're using figure seven to connect up all those dots, correct? We are relying on figure seven, yes. So if we rejected your figure seven, I'm speaking figuratively, your connect the dots argument, then there's no longer any need to have a corroboration, right? Your Honor, I disagree with that. I disagree with that. What is there for us to analyze if we say that in your challenge you failed to mount a sufficient challenge, you failed to point out anticipatory features of the patent that were invented by others? Well, Your Honor, what I would say is that the question here is whether or not Mr. Shelton was the sole inventor of the portions that we relied on. So if this Court were to find that we did not rely on the specific paragraph that Mr. Shelton himself says were contributed to by the other joint inventors, all we're saying then, the only conclusion that you would draw from that is Mr. Shelton's declaration says he is the inventor of what we relied on. But Mr. Shelton's declaration, because it's his own testimony, still needs to be corroborated in order for you to find that he is, in fact, the full inventor. So we believe you would still need to reach the corroboration issue, even if you find that his declaration where he says, I invented everything else, and therefore I'm the only inventor, is correct. Did I answer your question? Well, I think I take your argument to be that if we were to decide that Mr. Shelton's statement was to be thrown out because it's not corroborated, then we're left with a situation which is all we have is a patent that has three names on it, and presumptively the other two are joint inventors. Exactly, Your Honor. That is our argument. I have a quick question, Judge Stahl. There are several statements in the Board's corroboration analysis that refer to the content of Shelton 1 on which the petitioner relied in order to establish anticipation. For example, on page JA 36, it says, Mr. Morgan does not provide adequate explanation that such a limit is outside of, quote, the content of Shelton 1 on which petitioner relies for anticipation of the substitute claims. Now here, if we think that the Board was wrong in saying the content of Shelton 1 on which petitioner relies because the Board said that the petitioner relied on certain paragraphs that it did not, in fact, rely on, doesn't that mean we have to send the corroboration analysis back too? No, Your Honor, and the reason is because we did rely, just to set the stage a little bit, we certainly did rely on all of the things that the Board says we relied on for the full scope of the substitute claims. When it got limited just to on appeal, when Ethicon only appealed substitute claims 20 and 21, that scope got a little bit narrowed. But what the corroboration analysis that the Board did is trying to figure out is how important were the contributions of these joint inventors to what they say, figuring out how to make the motor function in the housing unit. So in our opinion, the Board didn't need to mash up on the corroboration aspect or really in the other aspects, but didn't need to specifically mash up, you know, for claim 20, I want to see exactly what paragraph you relied on and then see what Mr. Morgan says about it. And the reason is because Mr. Morgan himself, nor Mr. Shelton, neither of them provided that claim-by-claim analysis. So the Board had our general and overall disclosures before it, and it had vague testimony from Mr. Morgan saying, we did various things, but it never matched them to what the claims actually require. So we believe that you can, even if you find that the Board didn't piece out exactly where we relied on what different references, we certainly relied on portions of the 957 application that incorporated a motor. And if what Mr. Morgan is saying is that he helped figure out how to use the motor, the Board is free to then, as it did, say, we needed more. We needed more from the patent owner in order to believe that these named inventors who are presumed to have contributed to the invention actually had nothing to do with all of those paragraphs that you did cite, that we did cite and relied on. Okay. Counsel, we're way over your time. Thank you. Mr. Pepe, we'll actually restore your scroll rebuttal since we went so far over with Ms. Fiorella. Thank you, Your Honor. I will try to be brief. I just want to make a few points on rebuttal with respect to the proposed substitute claims. I think it's important for your honors to really understand what's in paragraphs 59 through 65 of Shelton 1 and how that relates to what Mr. Morgan and Mr. Bowerkirk allegedly contributed to conceiving. And those paragraphs specifically describe the use of censors. And Mr. Morgan was unequivocal in his declaration that his contribution was limited to incorporating censors. And the reason that intuitive did not specifically cite to paragraphs 59 through 65 in their opposition to the motion to amend is because the proposed substitute claims have nothing to do with censors. Now, the mere fact that Mr. Morgan and Mr. Bowerkirk may have contributed to some small part of what appears in figure 7, even if that's true, that does not make them inventors of every single feature that appears in figure 7. Figure 7 is discussed in detail in paragraphs 57 and 58, including the housing and the drive by the board that either Mr. Morgan or Mr. Bowerkirk contributed to the conception of those aspects. And to the extent that the board would have made that finding, they needed to do a claim by claim analysis and determine which portions Mr. Morgan and Mr. Bowerkirk contributed to and then compare those to what intuitive had relied on. It's clear that the board didn't actually do that analysis and therefore their decision that Shelton 1 anticipated claims 20 and 21 has to be reversed here because they didn't assess that anything that those two individuals contributed were part of what intuitive had relied on for their anticipation analysis with respect to those claims. There's also a lot of discussion about how Mr. Morgan and Mr. Bowerkirk contributed to the motors, but again, if your honors look at Appendix 711 through 723, where intuitive identified the portions of Shelton 1 that it was relying on for anticipation, there's no reference or discussion of motors because the substitute claims 20 and 21 do not specifically require motors. And I don't believe they relied on any motor-specific aspects. So while a motor might be important to the disclosure of Shelton 1, it does not mean it's irrelevant anticipating disclosure with respect to the substitute claims 20 and 21. Your honors, that's all I have unless there are any additional questions on that. No. Any more questions? No. Okay. Thank you. Thank you. Okay, the cases will be submitted. The honorable court is adjourned until tomorrow morning at 10 a.m.